IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

UNITECH COMPOSITES, INC.,

      Plaintiff,

v.                                                                      No.

PROSPECT MOLD & DIE COMPANY,

      Defendant.

## COMPLAINT

Plaintiff Unitech Composites, Inc. ("Unitech"), by its attorneys, for its Complaint against defendant Prospect Mold & Die Company ("Prospect Mold" or the "Defendant"), states as follows:

### NATURE OF THE ACTION

1.      This is an action to redress the damages suffered by Unitech following the unlawful poaching of one of its valued employees in breach of the express terms of an enforceable contract between Unitech and Prospect Mold.

### THE PARTIES

2.      Unitech is an Idaho corporation with its principal place of business in Hayden, Idaho.  Founded in 1979, Unitech is a preeminent provider of advanced structural and non-structural composite laminates and assemblies for defense and commercial applications.  Unitech provides specialized manufacturing expertise and uses state-of-the-art equipment with tight tolerance capabilities to machine, assemble, test, and finalize configuration.  Unitech provides critical components on major fixed-wing and rotary-wing platforms spanning entire program lifecycles from original equipment manufacturing through to aftermarket spares.

3. Prospect Mold is a Delaware corporation with its principal place of business in Cuyahoga Falls, Ohio.

4. Founded in Cuyahoga Falls, Prospect Mold has been in business in Ohio for over 70 years. Prospect Mold supplies various products to manufacturers in the commercial aerospace, defense aerospace, automotive and commercial industries. According to its website, Prospect Mold's headquarters remains located in Cuyahoga Falls and the majority of Prospect Mold's employees are based in Ohio.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000, and there exists complete diversity between the parties.

6. Personal jurisdiction is proper in Ohio pursuant to Ohio Rev. Code § 2307.382 because Prospect Mold is an Ohio corporation that conducts business in the State of Ohio.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendant can be found, resides in and transacts business in this District.

## FACTUAL BACKGROUND

**A.      The Mutual Nondisclosure Agreement**

8. On June 16, 2021, Unitech and Prospect Mold entered into a Mutual Nondisclosure Agreement (the "Agreement") in connection with their initial discussions and due diligence regarding a potential transaction. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

9. The potential transaction contemplated by the Agreement involved assets and operations within the State of Ohio and would have taken place and involved the State of Ohio.

10.     By its own terms, the obligations of the Agreement, as they relate to Unitech and Prospect Mold, apply to each party's "representatives."  (Ex. 1. ¶ 1.)

11.     The Agreement provides that "[a]ny reference to the Party in this Agreement shall also apply to such Party's representative, and each Party shall be responsible for any breach of the terms of this Agreement by its representative."  (*Id.*)

12.     The Agreement expressly identifies P4G Capital Management, LLC ("P4G") as a "representative" of Prospect Mold.  (*Id.*)

13.     Upon information and belief, P4G is a venture capital firm that owns Prospect Mold.

14.     While, upon information and belief, P4G retains an ownership interest in Prospect Mold, Prospect Mold's leadership team, based in the State of Ohio, remains in charge of the day-to-day operations of Prospect Mold.  Indeed, Prospect Mold's own website[1] states that P4G will not be "involved with the day to day operations of our business" and that "P4G is relying on the existing management team and employees[.]"

15.     Upon information and belief, Prospect Mold's management team directs, coordinates and controls the operations of Prospect Mold from the State of Ohio.  For example, the President of Prospect Mold, Brandon Wenzlik, and the Chief Financial Officer of Prospect Mold, Josh Yarchever, both manage and control Prospect Mold from the State of Ohio.

16.     Unitech provided P4G with Confidential Information of Unitech as the term is defined in the Agreement.

---

[1] *See* PROSPECT MOLD WEBSITE, THE HISTORY OF PROSPECT MOLD, www.prospectmold.com/history (last visited Oct. 5, 2022).

17.     The Agreement includes a non-solicitation obligation that prohibits each party from soliciting an employee of the other party until June 16, 2023.  Specifically, the Agreement states:

> In the absence of prior written consent from the other, each Party agrees that for a period of two (2) years from the date hereof it shall not, directly or indirectly, solicit for employment or hire any employee, officer or director of the other Party; provided that general solicitation for employment (and any hiring as a result thereof) shall not be deemed a breach of this paragraph.

(*Id*. at ¶ 5.) (Emphasis in original.)

18.     The Agreement also provides that the "prevailing Party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees."  (*Id*. at ¶ 7.)

**B.     In Breach of the Agreement, P4G Improperly Solicits Unitech's Employee.**

19.     In breach of the contractual non-solicitation obligation in the Agreement, Prospect Mold's representative P4G directly solicited one of Unitech's long-standing employees, Rob Barnett ("Barnett"), for employment.

20.     Specifically, beginning in December 2021, Mark Tattershall ("Tattershall"), the Vice-President, Business Development for P4G, and Mark Withrow ("Withrow"), the Operating Partner for P4G, solicited Barnett multiple times for employment.

21.     P4G's solicitation of Barnett occurred through written communications (including text messages and emails) and telephonic communications.

22.     P4G's numerous solicitations of Barnett occurred over the course of multiple months during the two-year non-solicitation period.

23.     For example, on December 3, 2021, Tattershall sent a text message to Barnett inquiring if Barnett was "looking for a move" because P4G is "going to be acquiring a few companies in the near future."

4

24.     Barnett responded to Tattershall's text message stating he was "not looking or in need" of new employment.

25.     Thereafter, in February, March and April 2022, Withrow sent text messages to Barnett and spoke to Barnett via phone.  During these conversations, Withrow solicited Barnett for employment and informed Barnett that, at Withrow's behest, Barnett would receive a hiring inquiry on behalf of a company which, upon information and belief, is owned or controlled by P4G.

26.     Tattershall and Withrow continued to contact Barnett in June and July 2022 via multiple text messages and emails.  Once again, these communications were an attempt by Tattershall and Withrow to solicit Barnett to leave his employment with Unitech.

27.     After numerous discussions, on July 6, 2022, Tattershall sent a text to Barnett stating that he is "struggling to match your current package, but working on it."  Ultimately, Tattershall conveyed a verbal job offer, including a compensation package, to Barnett.

28.     On July 7, 2022 Tattershall requested that Barnett send him a resume in order to "follow the HR process."  This was the first time anyone associated with P4G requested Barnett's resume, and at no time prior to this request did Barnett formally apply for any position with Prospect Mold or P4G.  Per Tatttershall's request, Barnett submitted his resume later that day.

29.     But for P4G's solicitation of Barnett, Barnett would not have applied for or accepted employment with P4G or Prospect Mold.

30.     On July 12, 2022, P4G caused Barnett to receive an offer letter (the "July 12 Offer Letter") in which Barnett was offered the position of Director of Business Development – Midwest at TIGHITCO, Inc. ("TIGHITCO") and that he would report to Tattershall.  A true and correct copy of the July 12 Offer Letter is attached hereto as **Exhibit 2**.

31.     TIGHITCO was acquired by P4G in 2022.

32.     The offer of employment contained in the July 12 Offer Letter was the direct result of Tattershall and Withrow's continued solicitation of Barnett.

33.     On July 13, 2022, P4G caused Barnett to receive a revised offer letter (the "July 13 Offer Letter") in which Barnett was again offered the position of Director of Business Development – Midwest at TIGHITCO and again would be reporting to Tattershall.  A true and correct copy of the July 13 Offer Letter is attached hereto as **Exhibit 3**.

34.     The offer of employment contained in the July 13 Offer Letter was the direct result of P4G's solicitation of Barnett.

35.     The July 13 Offer Letter, as compared to the July 12 Offer Letter, increased the amount of compensation offered to Barnett in order to entice him to leave his employment at Unitech.

**C.     Barnett Accepts P4G's Job Offer But Later Decides to Remain Employed by Unitech.**

36.     After months of solicitations via text messages, emails and phone calls, on July 13th Barnett accepted the offer of employment contained in the July 13 Offer Letter.

37.      After accepting P4G's offer of employment at TIGHITCO, on July 15th Barnett provided notice to Unitech that he was resigning his position effective July 29th.

38.     In response to the offer of employment Barnett received from P4G and as a direct result thereof, Unitech was forced to substantially increase Barnett's compensation in order to retain him as an employee of Unitech.

39.     The increase in Barnett's compensation as an employee of Unitech is in excess of $75,000 per year.

40.     On July 18th, after agreeing to a substantial increase in his compensation, Barnett informed Unitech that he would remain an employee of Unitech and rescind his acceptance of P4G's offer of employment.

41.     When Barnett informed Tattershall that he decided not to accept the job offer resulting from P4G's solicitation, Tattershall asked Bernett to delete the text messages relating to P4G's solicitations, which confirms  Tattershall was aware of the impropriety of his solicitations and that those actions constituted a material breach of the Agreement.

## COUNT I:
## BREACH OF CONTRACT

42.     Unitech restates and re-alleges the allegations above for this Paragraph of Count I as if fully set forth herein.

43.     On or about June 16, 2021, Unitech and Prospect Mold entered into the Agreement, which is a valid and enforceable contract supported by adequate consideration.

44.     Unitech performed all of its material obligations under the Agreement.

45.     The provisions of the Agreement apply not only to Unitech and Prospect Mold, but also to each party's "representatives."  (Ex. 1 at ¶ 1.

46.      The Agreement provides that "[a]ny reference to the Party in this Agreement shall also apply to such Party's representative, and each Party shall be responsible for any breach of the terms of this Agreement by its representative."  (*Id.*)

47.     In addition, the Agreement expressly defines P4G is a representative of Prospect Mold.  (*Id.*)

48.     The provisions of the Agreement further provide that each party to the Agreement, including their respective representatives, "agrees that for a period of two (2) years from the date hereof it shall not, directly or indirectly, solicit for employment or hire any employee, officer or

director of the other Party; <u>provided</u> <u>that</u> general solicitation for employment (and any hiring as a result thereof) shall not be deemed a breach of this paragraph." (*Id*. at ¶ 5) (emphasis in original).

49.    Prospect Mold materially breached Paragraph 5 of the Agreement when its representative, P4G, repeatedly solicited Barnett for employment.

50.    Tattershall and Withrow's repeated attempts to solicit Barnett to leave his employment with Unitech and accept employment with TIGHITCO, an entity owned by P4G, represent multiple material breaches of the Agreement.

51.    Under the terms of the Agreement, Prospect Mold is liable for P4G's breach of the Agreement.

52.    Prospect Mold's foregoing material breaches of the Agreement have proximately caused Unitech substantial injury in an amount to be proven at trial, but in excess of $75,000.

53.    Unitech's damages includes but are not limited to, the significant increase in compensation it was obligated to provide Barnett in order to retain his employment.

WHEREFORE, Unitech Composites, Inc. respectfully requests that this Court enter judgment in its favor on Count I and against Prospect Mold and award the following relief:

(a) compensatory damages in an amount to be determined at trial;

(b) costs and attorneys' fees pursuant to the Agreement; and

(c) such other and further relief as is just and proper.

Dated: October 6, 2022                    Respectfully submitted,

                                          UNITECH COMPOSITES, INC.


                                          By:  */s/ John F. Marsh*
                                          _____
                                                       One of Its Attorneys

                                          John F. Marsh (0065345)
                                          Bailey Cavalieri LLC
                                          One Columbus
                                          10 West Broad Street
                                          Suite 2100
                                          Columbus, OH  43215
                                          T:  (614) 229-3230
                                          F:  (614) 221.0479
                                          E jmarsh@baileycav.com

                                          Jeanah Park, Esq.
                                          *(Pro Hac Vice* forthcoming*)*
                                          jpark@vedderprice.com
                                          Zachary J. Watters
                                          zwatters@vedderprice.com
                                          *(Pro Hac Vice* forthcoming*)*
                                          VEDDER PRICE P.C.
                                          222 North LaSalle Street
                                          Chicago, Illinois 60601
                                          T:  (312) 609-7500
                                          F:  (312) 609-5005